# THE STATE ex rel. BUFFUM TELEPHONE COM-PANY v. PUBLIC SERVICE COMMISSION, Appellant.

### In Banc, December 22, 1917.

1. **PUBLIC UTILITY: Service for Members Alone.** A voluntary as-
sociation of farmers, which constructs telephone lines and owns
the 'phones, not operated for hire, but for the personal conven-
ience of the members, with no other expenses than the necessary
cost of connecting the lines at the switchboard, in a town in which
they center, with the lines of other like associations, is not a pub-
lic utility; and since its use and operation do not affect the in-
terests of the general public, the Public Service Commission has
no power under the statute to compel the making of a physical
connection between its lines and those of a public telephone cor-
poration. The regulative authority of the Commission is con-
fined to such companies as "conduct telephonic communications
for hire."

2. ———: ———: **Service to Non-Subscribers.** Nor did the fact that
the association charged a flat rate to a few non-members, who con-
structed their own lines and maintained their own 'phones, and
thereupon were entitled to connect with the lines of members and
to use the facilities of the association without further charge,
convert the association, the use of the lines of which was other-
wise confined to members alone, into a public utility; for its
constitution and by-laws conferred upon it no such authority as
it thus exercised.

3. ———: **Power of Supervision: Public Rights.** To authorize super-
vision by the Public Service Commission, the exercise by the utility
of its powers must be such as will affect public interest rather
than private rights.

628    SUPREME COURT OF MISSOURI,

State ex rel. Tel. Co. v. Public Service Comm.

4. **EXTENT OF REVIEW: Questions Not Raised Before Commission.** A constitutional question injected into a case for the first time on review in the circuit court, namely, that the order of the Public Service Commission requiring the defendant to connect its telephone lines with the lines of a voluntary association, not a public utility, is a taking of property without just compensation and without due process of law, cannot be considered by the court, because not timely raised.

5. **PRIVATE TELEPHONE ASSOCIATION: Connection With Public Utility: Public Necessity.** Numbers will not establish a claim of public necessity. That a large number of persons are being served by telephone lines, constructed for their own convenience and confined to their private use, does not entitle them, individually or collectively, on the ground of public necessity, to an order from the Public Service Commission compelling a public utility in their midst to make a physical connection between their line and its own.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*A. Z. Patterson* and *James D. Lindsay* for appellant.

(1) The enforcement of physical connection and interchange service between carriers, railroad companies, telegraph companies, telephone companies, or between such a company and customers, under reasonable conditions, through switches, spur tracks, or connecting wires, is an exercise of the power of regulation, and not an act to be accomplished only through an exercise of the right of eminent domain. In the instant case, the order of the Public Service Commission requiring the Buffum Telephone Company, at the expense of the Auxvasse Mutual Telephone Company, to construct and maintain a physical connection with the latter company, and to receive and transmit messages or conversations for long distance transmission originating on the lines of the Auxvasse Company, is valid as a reasonable regulation of the business of respondent and its use of its property—is a requirement of service—and is not a

"taking" or appropriation of respondent's property. Sections 2, 16, 86, 87, 90, 93, Public Service Commission Act; Railway v. Michigan Ry. Comm., 231 U. S. 457, 468; Railroad v. Railroad Comm., 236 U. S. 615; Jacobson v. Wisconsin Comm., 179 U. S. 287; Railroad v. Iowa, 233 U. S. 334; Railroad v. Corporation Comm., 206 U. S. 1; Washington ex rel. v. Fairchild, 224 U. S. 510; Tel. & Tel. Co. v. Hotel Co., 214 Fed. 666; Telephone Co. v. Railroad Comm., 162 Wis. 383; Telephone Co. v. Railroad Comm., 161 N. W. 240; Telephone Co. v. Telephone Co., 96 Neb. 260; Tel. & Tel. Co. v. State, 38 Okla. 554; State ex rel. v. Tel. & Tel. Co., 147 Pac. 885. The Buffum Telephone Company is a common carrier of spoken messages, and its duties in that regard must be tested by the rules which the courts have laid down as appropriate and necessary in determining the obligations assumed by common carriers. Telephone Co. v. Telephone Co., 236 Mo. 114; Telegraph Co. v. Tel. & Tel. Co., 177 Fed. 726; Telegraph Co. v. Tel. & Tel. Co., 61 Vt. 241; State ex rel. v. Telephone Co., 17 Neb. 126. (2) The Auxvasse Mutual Telephone Company is a public utility and is subject to the jurisdiction of the Public Service Commission, because it is engaged "in the conduct of the business of affording telephonic communication for hire." It does this in collecting tolls from non-members who use any part of its system of lines for telephonic communication, or in collecting five dollars per annum from all of those subscribers who are non-members. Subdiv. 17, Sec. 2, Public Service Act 1913; Sections 86 and 87 and Subdivision 3 of Section 93, Publ. Serv. Act 1913; Tel. & Tel. Co. v. State, 144 Pac. 1060, 1062; 21 Cyc. 437. The Legislature used the word "hire" designedly as distinguished in meaning from the word "profit." Carter v. Arnold, 134 Mo. 208. Contemporary history and the words employed in the definition of the term "telephone corporation," show that the definition cannot be so narrow as to include only corporations operating for profit and with dividends as the object in view. Land & Impr. Co. v. Kansas City, 172 Mo. 533. (3) It is not the amount but the character of the business done which constitutes a public utility. It need not be unrestricted-

ly offered or open to all of the public. Taxicab Co. v. Kutz, 241 U. S. 252; Public Utilities Comm. ex rel. v. Noble, 113 N. E. 910; Public Utilities Comm. ex rel. v. Telephone Co., 268 Ill. 411; Public Service Comm. v. Fox, 160 N. Y. Supp. 59; Van Dyke v. Geary, 37 Sup. Ct. Rep. 483; Water, Light & Power Co. v. Eshleman, 167 Cal. 681; Tel. & Tel. Co. v. Hotel Co., 214 Fed. 666. (4) The Auxvasse Company is subject to the orders and jurisdiction of the Public Service Commission, not only by the evidential facts in the record showing it to be a company "affording telephonic communication for hire," but also by virtue of its complaint and its express submission of itself and its business to the Commission, for regulation, in those express terms. Tel. & Tel. Co. v. State, 144 Pac. 1060. (5) But the power of the Public Service Commission to require the Buffum Telephone Company to provide instrumentalities and facilities adequate and in all respects just and reasonable with respect to its business of affording long distance telephone service, is plenary, and this power does not depend for its existence or exercise upon the complainant or applicant for the service, being technically and unrestrictedly a public service company. But it is enough that the business afforded and the service attempted by the complainant affects so considerable a fraction of the public that it is public in the same sense in which any other may be called so. Secs. 86 and 87, Public Service Commission Act; Subdivisions 6 and 9 of Section 16, Ibid.; Taxicab Co. v. Kutz, 241 U. S. 252; Public Service Comm. v. Fox, 160 N. Y. Supp. 59; Tel. & Tel. Co. v. Hotel Co., 214 Fed. 666; Van Dyke v. Geary, 37 Sup. Ct. Rep. 483; Water, Light & Power Co. v. Eshleman, 167 Cal. 681; Public Utilities Comm. ex rel. v. Telephone Co., 268 Ill. 411; Ins. Co. v. Lewis, 233 U. S. 389; Ratcliffe v. Stock Yards Co., 86 Pac. 150; Peck v. Tribune Co., 214 U. S. 190. (6) The constitutional issues attempted to be injected into the case through plaintiff's motion for judgment in the circuit court, came too late. They were not raised in the application for rehearing filed with the Public Service Commission, and plaintiff cannot urge them now.

Such issues must be raised in time, and in due course of orderly procedure. Section 110, Public Service Commission Act; State ex rel. v. Atkinson, 192 S. W. 86; Sheets v. Insurance Co., 226 Mo. 612; Hattzler v. Met. St. Ry. Co., 218 Mo. 562.

*Jeffries & Corum* and *E. H. Painter* for respondent; *D. A. Frank,* of counsel.

(1) The commission did not have jurisdiction or authority to order a physical connection between the two telephone lines. Subdiv. 17, sec. 1, and art. 5, Public Service Act, Laws 1913; Tel. Co. v. Light & Tel. Co., 236 Mo. 114; Public Utilities Comm. ex rel. v. Mutual Tel. Assn., 270 Ill. 183; State ex rel. v. Public Service Comm., 192 S. W. (Mo.) 958; State v. Tie & Timber Co., 181 Mo. 558. (2) The physical connection ordered is unauthorized under the statute, and confiscatory, because: (a) No public convenience or necessity will be subserved thereby. Subdiv. 3, sec. 93, Public Service Act, Laws 1913; Atchison Railroad v. Public Serv. Comm., 192 S. W. (Mo.) 460; Tel. Co. v. Tel. Co., 37 Ga. Com. Leaflet, 143; State of Washington ex rel. v. Fairchild, 224 U. S. 510; People ex rel. v. Tel. Co., 58 N. Y. Supp. 221; Mo. Pac. Ry. Co. v. Nebraska, 164 U. S. 403; In re Petition of Phil., M. & S. Railroad, 203 Pa. 354. (b) The purpose is "primarily to secure the transmission of local messages or conversations between points within the same city or town." Subdiv. 3, sec. 93, Public Service Act, Laws 1913; Tel. & Tel. Co. v. Eshelman, 137 Pac. 1119. (3) The physical connection prayed for would operate as the taking of the property of the Buffum Company without a judicial determination that the taking is for a public use, and without due process of law, in violation of the provisions of Fourteenth Amendment to Constitution of the United States, and Sections 10, 20 and 30 of Article 2 and Section 4 of Article 12 of Constitution of Missouri. State ex rel. v. Publ. Serv. Comm., 194 S. W. 287; Tel. & Tel. Co. v. Railroad, 202 Mo. 656; Pumpelly v. Greenbay Co., 13 Wall. 166; State ex rel. v. Associated Press, 159 Mo.

632    SUPREME COURT OF MISSOURI,

State ex rel. Tel. Co. v. Public Service Comm.

410; Tel. Co. v. Light & Tel. Co., 236 Mo. 114; Tel. & Tel. Co. v. Eshelman, 137 Pac. 1119; Railway Co. v. Nebraska, 164 U. S. 403; Cape Girardeau v. Houck, 129 Mo. 607; Shoemaker v. United States, 147 U. S. 282. (4) The Public Service Commission is not a judicial body, and has no authority to pass upon constitutional questions, and no legislative enactment can give it such authority. Railroad v. Publ. Serv. Com., 192 S. W. 460; State ex rel. v. Publ. Serv. Com., 192 S. W. 958; State ex rel. v. Locks, 266 Mo. 314; State ex rel. v. Andrae, 216 Mo. 617; Railroad v. Coal Co., 162 Mo. 288; Aldridge v. Speers, 101 Mo. 460; Kansas City v. Baird, 98 Mo. 215.

WALKER, J.—This is an appeal by the Public Service Commission from a judgment of the circuit court of Cole County, setting aside an order of the Commission, which required that a physical connection be made at the town of Auxvasse in Callaway County between the Auxvasse Mutual Telephone Company and the Buffum Telephone Company.

The proceedings before the Commission were upon the complaint of the Auxvasse Company asking that the Buffum Company be required to receive and transmit long distance messages over its lines from the members and subscribers of the Auxvasse Company, that they might thereby have long distance connection over the lines of the Buffum Company.

The Auxvasse Company is not incorporated, but is a mutual telephone company formed by the union at the town of Auxvasse of various neighborhood lines extending into the town and united in a local exchange. It was organized in 1911, to afford cheap telephone service to its shareholders and subscribers. It consists of about one hundred and forty members owning twelve or more lines running into and connected at a central office and switchboard in the town of Auxvasse. The members on the various lines composing the system, furnish and own their respective lines and instruments and keep the same in repair, and the members on each line maintain an

organization of their own. The union of the various lines under a constitution and by-laws constitutes the central organization known as the Auxvasse Mutual Telephone Company. The organization owns the poles, wires and equipment in the town of Auxvasse, and the central office and switchboard whereby all the various lines are united and a local exchange maintained. The maintenance of the central office, and of the upkeep of the property belonging thereto, is borne by receipts for service rendered to certain subscribers at flat rates, who are non-members, and from toll charges received from non-members talking from 'phones on the lines of the company to a person on the line of another mutual local company with which the Auxvasse Company maintains free exchange service arrangements.

Any deficit is made up by assessment upon the members. There are eight subscribers not members who pay a flat rate or fee of five dollars each per annum for service on the exchange and for communications over the various local lines of the company.

Any white person may talk free from the 'phone of a member to a person at a 'phone on any of the lines of the company, and may talk with a person on the line of any of the other like mutual local companies with which the Auxvasse Company has exchange service arrangements upon payment of a toll charge of ten cents.

The members and subscribers on the various lines receive free service over the lines of the company and over the lines of other like mutual companies with which exchange service arrangements have been made. There are about twenty-five of the latter.

The members and subscribers of the Auxvasse Company also have service over a mutual line owned by the company, to Mexico, Missouri, but do not have general long distance service. The service of the members and subscribers is confined to the lines of the company, the connecting line owned by the members to Mexico, and the lines of other like mutual companies with which free service arrangements have been established.

The Buffum Company is an incorporated company, and has a local exchange in the town of Auxvasse, and through its own lines, and connecting lines of other companies with which it is affiliated, has long distance service over the country in general. The central offices of the Buffum Company, and of the Auxvasse Company, are located in the same block near each other.

This action is prompted by a desire of the members of the Auxvasse Company to have from their own 'phones long distance connection through the Buffum Exchange with the various lines and points reached by the Buffum Company. Connection with Fulton, the county seat of Callaway County, is especially desired.

The Commission found that the cost of the physical connection between the two exchanges would not exceed $25; and that the connection desired was not for an interchange of messages between the local exchanges of the two companies, but that messages transmitted by the subscribers of the Auxvasse Company over its lines should be received and transmitted by the Buffum Company over its lines. The Commission further found that the matter was within the provisions of the Public Service Act; that the physical connection desired could reasonably be made and that there would thereby be formed a continuous line of communication between the two companies for the transfer of messages or conversations by persons entitled to use the lines of the Auxvasse Company; that public convenience and necessity would thereby be subserved; whereupon the Commission ordered the connection to be made and that the service asked be furnished by the Buffum Company.

The Commission also found that irrespective of whether the property of the Auxvasse Company was impressed with a public use or not, the nature of its business and the number of persons served by it were such as to create a necessity for the physical connection demanded, and therefore the making of same and the rendering of the service was a duty which could lawfully be required of the Buffum Company.

It was ordered that the expense of making the connection be borne by the Auxvasse Company, and that said company, or its subscribers, or any person using its line for the purpose of long distance connection with the lines of the Buffum Company, pay to the latter company for such service, the full amount of the tolls and charges of the Buffum Company therefor, in accordance with its schedule filed with the Commission.

The Buffum Company filed its application for a rehearing, but failed to allege as grounds for same the violations by the Commission through its order of provisions of the Constitution of Missouri and of the United States, as subsequently set forth in its petition for review. Upon the overruling of the application for a rehearing, the Buffum Company filed its petition for a review in the Cole County Circuit Court of the action of the Commission, setting up the constitutional questions above noted. In the circuit court the respondent herein asked that a jury be called and that it be permitted to introduce additional testimony. These requests were refused.

Respondent then filed its motion for a judgment reversing the order of the Commission, and among other things set up that the order was made without due process of law, and was a taking of respondent's property without just compensation, and was a violation of Sections 10, 20, 21 and 30 of Article 2 of the Constitution of Missouri, and of Section 1 of the Fourteenth Amendment of the Constitution of the United States, and that the alleged taking of its property was an unauthorized exercise of the right of eminent domain.

The appellant, Public Service Commission, filed its motion to strike out respondent's motion for a judgment, for the reason that same was based upon grounds not urged or relied upon by respondent in its motion for rehearing, and was a violation of the method of procedure provided for by the Public Service Act, under the law of its creation, which motion was overruled. The court thereupon sustained respondent's motion, and entered judgment annulling and setting aside the order of the Commission.

The judgment of the circuit court, sustaining the respondent's motion, involves a finding that, upon the record, the Auxvasse Company was not a public utility operating for hire, and therefore not subject to the jurisdiction of the Commission; that public convenience and necessity would not be subserved by the making of the connection, and that no authority existed for the order, and that enforcement of same constituted a taking of respondent's property in the sense and manner forbidden by the Constitution.

A synopsis of the relevant sections of the Public Service Act (Laws 1913, pp. 556-651) will assist in determining the matter at issue. By a telephone corporation as the term is employed in the act is meant "every corporation, company, association, joint stock company or association, partnership and person, . . . owning, operating, controlling or managing any telephone line or part of telephone line used in the conduct of the business of affording telephonic communication for hire." [Sub-div. 17, sec. 2.]

The term telephone line is defined to include every sort of property, "used, operated, controlled or owned by any telephone corporation to facilitate the business of affording telephonic communication." [Sub-div. 18, sec. 2.]

The jurisdiction, supervision, powers and duties of the Commission are declared to extend: "to all telephone lines, as above defined. . . . and to every telephone company, . . . so far as said telephone . . . lines are and lie, and so far as said telephone companies . . . conduct such line or lines, respectively, within this State." [Sub-div. 6, sec. 16.]

The subjection of telephone corporations to the supervision of the Commission in respect of facilities and service it shall afford, is stated thus: "Every . . . telephone corporation shall furnish and provide with respect to its business such instrumentalities and facilities as shall be adequate and in all respects just and reasonable." [Sec. 87, Sub-div. 1.]

The duty of each telephone corporation to transmit messages is thus prescribed: "Every . . . telephone corporation operating in this State shall receive, transmit and deliver, without discrimination or delay, the conversations and messages of every other . . . telephone corporation with whose line a physical connection may have been made." [Sub-div. 5, sec. 87.]

The provision for requiring physical connections between lines of telephone companies, is as follows: "Whenever the commission . . . shall find that a physical connection can reasonably be made between the lines of two or more telephone corporations . . . whose lines can be made to form a continuous line of communication by the construction and maintenance of suitable connections for the transfer of . . . conversations, and that public convenience and necessity will be subserved thereby, or shall find that two or more . . . telephone corporations have failed to establish joint rates, tolls or charges for service by or over their said lines, and that joint rates, tolls, or charges ought to be established, the commission may, by its order, require that such connection be made, except where the purpose of such connection is primarily to secure the transmission of local . . . conversations between points within the same city or town, and the conversation be transmitted . . . over such connection under such rules and regulations as the commission may establish, and prescribe through lines and joint rates, tolls and charges to be made, and to be used, observed and in force in the future. If such . . . telephone corporations do not agree upon the division between them of the cost of such physical connection or connections or the division of the joint rates, tolls or charges established by the commission over such through lines, the commission shall have authority, after further hearing, to establish such division by supplemental order." [Sub-div. 3, sec. 93.]

The powers of the Commission, in requiring improvements, changes in or additions to telephone facili-

638    SUPREME COURT OF MISSOURI,

State ex rel. Tel. Co. v. Public Service Comm.

ties are thus further amplified and emphasized: "Whenever the commission shall be of the opinion . . . that repairs or improvements to or changes in any . . . telephone line ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the convenience of the public or employees, or in order to secure adequate service or facilities for . . . . telephonic communications, the commission shall make and serve an order, directing that such repairs, improvements changes or additions be made within a reasonable time and in a manner to be specified therein, and every . . . telephone corporation is hereby required and directed to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it." [Sec. 95.]

All of these provisions are to be liberally construed as required by the act, towit: "The provisions of this act shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities." [Sec. 127.]

I. If the companies here involved are public utilities within the meaning of the Public Service Act and a physical connection between them will add to their efficiency as such, then the judgment of the circuit court should be reversed and the order of the Commission affirmed, otherwise not. If it were not conceded by the Buffum Company that it is a public utility and as such subject to the supervision of the Commission, the nature of its organization and the character of its activities would justify no other conclusion. It remains, therefore, to be determined whether the Auxvasse Company is subject to a like classification. To render it so, it is not necessary that it be incorporated. Under the inclusive provisions of subdivision 17 of section 2, supra, any association, joint stock company, partnership or person, dependent primarily upon the character of the telephone business they conduct, may be so classified.

*Public Utility.*

## VOL. 272, OCTOBER TERM, 1917.      639

State ex rel. Tel. Co. v. Public Service Comm.

The Auxvasse Company is a voluntary association. The right to the use of the facilities it affords is limited to white persons who are the owners of certificates of shares therein, for which they are required to pay a fixed sum. In addition an assessment is made upon such shareholders of $1.50 each per quarter to maintain and operate a central office or switchboard. Maintenance charges required of each shareholder may be fixed quarterly. Shareholders are not required to pay more than is actually necessary for the upkeep and operating expenses for the quarter ensuing the fixing of same. Non-subscribers are not charged for talking from any telephone on the Auxvasse switchboard to any other telephone on the same switchboard; but when talking from a telephone on the Auxvasse switchboard to one on a connecting switchboard they are required to pay a fee of ten cents to the owner of the telephone where the call is made. Fees thus collected are required to be paid into the company's treasury during the quarter when they were collected. This constitutes the extent of the business and income of the Auxvasse Company, except five dollars per year paid by each of eight flat rate subscribers who are thus entitled to the facilities afforded without further charge. An abstract of the testimony of a number of the shareholders of this company given at the hearing before the Commission will give a definite idea as to the character of the business of the company from which its nature and purpose may be determined. These are literal excerpts from different witnesses' testimony in response to inquiries propounded to them on the stand:

"To maintain and operate the central office each party contributes $1.50 per quarter."—E. W. Martin.

"The lines are kept up by the members, who own them. This keeping up of the lines applies to residents in the town of Auxvasse and the surrounding country."—S. W. Turner.

"It was never the intention of the company to go into the telephone business for profit. No, I don't think they calculated on more than enough to make ex-

penses. It was not the intention to go into what is known as a commercial business. The lines were built for convenience. That's what a telephone is for."—J. F. Buckner.

"The company is not in the telephone business to make money out of it. It was simply for the accommodation of the shareholders. The Mexico toll line is kept up out of the treasury of the company. I use it three or four times a day, I reckon, but I pay no toll charges for this use. The toll line is used a whole lot. Country people when they come in use it more than we do in town. We keep it up for the benefit of those who want to use it."—W. F. Woodson.

"On the Auxvasse line each individual owns the box he uses, and the association owns the telephone line reaching to the switchboard. The association does not build lines to anybody. It is simply a collection of individuals divided further into lines and each line is a separate organization in that it owns its own line. The Auxvasse Company is not a corporation; it is simply a voluntary association composed of individuals. Its purpose is to provide telephone service to its stockholders at actual cost. No service is furnished in town to anybody except stockholders."—S. M. Turner.

The constitution and by-laws and the oral testimony all point to the conclusion that the Auxvasse Company is primarily a private organization not operated for hire. Operation for hire is a prerequisite to supervision by the Commission. The reason is plain. The Commission was created, as is evident from the entire statute defining its powers, not to interfere with individual action except where same assumes a public nature, but to provide regulations and give plenary power as defined by the statute to the Commission to control such utilities as from their nature and operations may affect the interests of the general public. All such organizations are commercial in their nature in that they are not conducted for favors, but for fees. Recognizing this fact, the framers of the Public Service Act made this a condition precedent to Commission control. That a fee may be exacted from non-subscribers for

talking from a telephone on the company's switch-board to one on a connecting line does not militate against the correctness of the conclusion that this company does not afford telephonic communications for hire. If thus conducted, the right of non-subscribers to demand service would be absolute upon the tender of the fee. Such a right cannot exist, however, because the telephones are individually owned by those in whose premises they are located and no limitation as to such ownership having been made by the company, if such could be made under the circumstances, the right of use to non-subscribers is at best permissive and being so does not authorize the conclusion that the company is conducted for hire. The fee thus authorized to be charged is but an incident in the general conduct of the business of the company, and is not indicative of its character, which is to serve those who sustain it and not the general public. Nor is the claim that the eight subscribers, who in the absence of any authority therefor in the company's constitution and by-laws, are permitted upon the payment of a flat rate, free from assessments, to enjoy its facilities, an argument in favor of the contention that the company is conducting its business for hire. Each of these subscribers owns the 'phone used by him; except therefore for the difference between the payments made by them and others they sustain no different relation to the company. If their relation be construed to give color to the contention that these transactions are of a commercial nature and hence the company is conducting its business for hire, it will be sufficient to say that the constitution and by-laws based thereon confer no such authority upon the company as is thus exercised. The elementary axiom is therefore applicable that the company cannot enlarge its character by exceeding its powers.

The settlement of a controverted question is often rendered easier by a resort to elementals. To that end, what is meant by such companies as "conduct telephonic communications for hire?" Simply those which engage in business as a commercial transaction, or for profit.

272 Mo.—41

Summarizing what we have heretofore said, is this company of that class? It lets nothing; it hires nothing; but for the maintenance of its own property, and for that alone, it exacts a like sum quarterly from all of its members. The accessories, to-wit, the telephone boxes necessary to render the lines available for the transmission of conversations, do not belong to the company, but to the individual members. Hence, the property owned by the company is but inconsiderable and there is in existence no such organization as is contemplated by the statute.

The Public Service Act is further illuminative of the character of telephone companies subject to its provisions, in defining the requirements that may be made of them: The Commission may require them to furnish and provide such instrumentalities as shall be adequate in all respects for the transacting of their business (Sec. 87); to transmit and deliver without discrimination or delay conversations sent over other lines with which they have physical connection (Sub-div. 5, Sec. 87); to make physical connections with other like companies (Sub-div. 3, Sec. 93); to order repairs, improvements and changes in companies for the betterment of the service (Sec. 95). In addition they may be required to file schedules of their rates of charges with the Commission and subject themselves to its supervision by complying with its rules and regulations for the operation of telephone companies. There is no pretense that in any of these particulars this company has complied with these statutes. On the contrary, it is not contended that it could be required so to do. Unless there is other evidence than is disclosed by the record, we are inclined to the opinion that it could not be so required. Rulings upon kindred questions in other jurisdictions are but a little more than persuasive in the determination of the matter here at issue on account of differences in the statutes construed. Rightly reasoned this well marked line runs through them all that to authorize supervision the character of the utility must be of such a nature that the exercise of its powers will affect public rather than

## VOL. 272, OCTOBER TERM, 1917. 643

State ex rel. Tel. Co. v. Public Service Comm.

private rights. Any other classification would destroy the ruling purpose underlying the creation of public service commissions, and necessarily, sooner or later, run afoul of constitutional provisions, the violation of which would be inimical to individual liberty of action.

II. The same facts adduced to show that the Auxvasse Company is not a public utility will sustain the conclusion that its connection with the Buffum Company is not such a matter of public necessity and convenience as to authorize the issuance of an order in regard thereto. Recapitulated these are: the nature of its business, existing as it does not for public use but private convenience; its requiring no pay for profit but fees only for the purpose of existence. Need arguments be piled up like Pelion on Ossa to establish the fact that facilities added by the Commission's order to an association of this type, will enable it to pass beyond its own tether and add even incidentally to the convenience of others than its own membership? We think not.

*Power of Commission.*

III. The constitutional question injected into this controversy for the first time in the petition for review was not timely. How, without a contradiction in terms, can a matter be reviewed which has not been viewed? The purpose of the petition filed in the circuit court, in cases of this character, would be defeated if new issues were permitted to be incorporated therein. Forms of procedure are for the purpose of facilitating business whether it be of a court or a commission; and there is no more reason why, when required by law, they should not be observed in one case than in the other. By the express language of Section 110 of the Public Service Act (Laws 1913, p. 641) it is provided that "no corporation or person or public utility shall in any court urge or rely on any ground not set forth in said application," referring to that of rehearing. We ruled in State ex rel. v. Atkinson, 269 Mo. 634, that the observance of this rule was obligatory. There is no reason for a variance from this conclusion. Neither within the letter nor

*Questions Un'imely Raised.*

spirit of the Public Service Act is the character of the Auxvasse Company such as to render it subject to the Commission and hence the latter is not authorized to comply with the demand herein made.

IV. The contention is vaguely made by appellant that the individual members of this company have, collectively, the right to demand the connection here under consideration. This contention is evidently

Public
Necessity.

based upon the assumption that numbers alone will establish the claim of public necessity. This is not true. Their mere numbers give them no more rights in the premises than a single individual would have under like circumstances. If A should demand that his private 'phone be connected with the Buffum Company, we may look in vain for authority in reason or the law for the exercise of such power by the Commission as will effect a compliance with this request. Granted to A, the right must, as a necessary consequence, be conceded to every other individual owning a private telephone line. The result would be the improper invasion of the rights granted by law to the Buffum Company or, in other words, the taking of its property without due process of law. A, therefore, is entitled to the same service as others but not more, and he will only be heard to complain when such service is denied. This subject was discussed incidentally with much clearness in Home Tel. Co. v. Sarcoxie L. & Tel. Co., 236 Mo. l. c. 133, in which the conclusion we have indicated was reached.

There is, in our opinion, no sufficient ground for the order of the Commission requiring a connection to be made between the Buffum and the Auxvasse companies, and the judgment of the circuit court is therefore affirmed. It is so ordered.

All concur, except *Blair, J.,* who dissents.