**STATE of Missouri ex rel. KANSAS CITY TRANSIT, INC., Daniel L. Brenner, M. J. Coen, Charles G. Hanson, A. D. Martin, Sr., William S. Morris, Albert W. Thomson, Edwin B. Wright and G. Kenneth Baum, Relators-Appellants,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri, Tyre W. Burton, Chairman, E. L. McClintock, William Barton, Frank W. May and Donal D. Guffey, Commissioners, Respondents.**

**No. 52022.**

Supreme Court of Missouri,
En Banc.

Sept. 12, 1966.

Albert Thomson, Robert W. Cook, Kansas City, John H. Hendren, Jefferson City, for relators-appellants, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, Hendren & Andrae, Jefferson City, of counsel.

Wayne W. Waldo, Gen. Counsel, Thomas J. Downey, Sp. Counsel, for respondents.

FINCH, Judge.

The Public Service Commission of Missouri, following a hearing relative to certain changes which had occurred in the capital structure of Kansas City Transit, Inc., entered this order:

"That Kansas City Transit, Inc., be and it is hereby prohibited from making further reductions in the account entitled 'Unearned Surplus' (also designated by the company as 'Capital Contributed') by any manner or means whatsoever without the prior authorization of the Commission."[1]

The above order was affirmed on certiorari by the Circuit Court of Cole County. Relators, Kansas City Transit, Inc., and its officers and stockholders, referred to herein as "Transit," appealed to the Kansas City Court of Appeals, which reversed, but on its own motion transferred the case to this court pursuant to the Constitution, V.A.M.S., Art. V, § 10, and Civil Rule 84.05(g), V.A.M.R.

Transit's brief on appeal asserts that:

(1) There was no statutory authorization for the Commission to make the requirement contained in the questioned order; and

(2) The order was unreasonable and not supported by evidence.

■ An additional contention that the order violated constitutional rights under the Fourteenth Amendment of the Constitution of the United States and § 10 of Art. I of the Constitution of Missouri was raised for the first time on appeal. The issue was not raised in the application for rehearing before the Commission. Section 386.500(2) (all statutory references are to RSMo 1959 and V.A.M.S.) provides that grounds not specifically set forth in the application for rehearing may not be asserted in any court upon review. This court has applied that provision to constitutional questions. State ex rel. Buffum Tel. Co. v. Public Service Commission, 272 Mo. 627, 199 S.W. 962, L.R.A.1918C, 820; State ex rel., to Use of Alton R. Co. v. Public Service Commission, Mo., 100 S.W. 2d 474. We will not consider the constitutional questions.

■ Transit is a street railway corporation engaged in the operation of a local transit system in the greater Kansas City area. It is subject to the jurisdiction of the Commission.

On May 11, 1961, the Commission, pursuant to § 387.340, authorized and approved a corporate reorganization of Transit. A newly formed corporation, The Sovereign-Western Corporation, herein called "Sovereign," acquired all of the common stock of Transit. Preferred stock of Transit in the amount of $4,445,000 was cancelled and the holders thereof received new preferred stock of Sovereign in exchange. This relieved Transit of the obligations imposed by the preferred stock. As a part of the reorganization, Transit was permitted to transfer approximately $1,250,000 in non-operating assets to Sovereign. The latter was represented to be planning to engage in diversified activities, thereby increasing the soundness and stability of the operation.

---

[1]. A total of six orders were issued but an appeal was taken only as to the order quoted.

The capital represented by the preferred stock of Transit became capital surplus, referred to in the Commission order as "unearned surplus" and as "capital contributed." After the reorganization the capitalization of Transit consisted of long-term equipment notes in the amount of $1,000,592 and equity consisting of common stock of $30,000 and unearned or capital surplus of $4,475,734, or a total of $5,-506,326. Current assets of the company were $1,119,660 and current liabilities $1,-160,782. Net operating assets were $5,925,-708.[2]

The Commission, on February 8, 1962, authorized the Westgate-California Corporation, herein called "Westgate," to acquire all of the common stock of Transit from Sovereign. This acquisition resulted from an agreement of merger between Sovereign and Western in December 1961. During 1962, Transit paid ordinary dividends of $118 per share or a total of $354,000, but no liquidating dividends were made. Net earnings for 1962 were $282,163.

In February of 1963, Westgate sold all of the common stock of Transit and all the stock of Greater Kansas City Bus Company[3] to seven individuals, for whom Mrs. Alice Wrigley acted as trustee. The sale price was $4,550,000. Notes were given for the entire purchase price. A few days later, on February 20, 1963, pursuant to resolution of its board of directors, Transit effected a reduction in its capital contributed account of $1,554,600 and distributed that amount to the stockholders. They immediately applied it on the notes given for the purchase price. An additional distribution of capital in the amount of $250,000

was authorized by the directors and made on June 20, 1963. It also was applied on the purchase notes given for the Transit and Greater Kansas City Bus stock purchases. At the time of the Commission hearing the only payments which had been made by the seven individuals on the purchase price of the Transit and Greater Kansas City Bus stock were these two liquidating dividends. No approval of these capital reductions and distributions was sought from the Commission, and the latter learned thereof in a rate hearing. As a result, the Commission held a hearing and entered the order from which Transit has appealed.[4]

Was there statutory authority for the Commission to order Transit not to make further capital distributions from its unearned or capital surplus account to stockholders without prior authorization by the Commission?

█ We start with the premise that the Commission "is an administrative body of limited jurisdiction, created by statute. It has only such powers as are expressly conferred upon it by the statutes and reasonably incidental thereto. State ex rel. and to Use of Kansas City Power & Light Co. v. Buzard, 350 Mo. 763, 168 S.W.2d 1044." State ex rel. Harline v. Public Service Commission, Mo.App., 343 S.W.2d 177, 181. Accordingly, we must find the power conferred by statute if it exists at all. In such search, however, we must recognize that the Commission has not only the powers and duties expressly specified but "also all powers necessary or proper to enable it to carry out fully and effectually

2. In approving the reorganization, including the transfer of the non-operating assets to Sovereign, the Commission concluded "that sufficient operating capital would remain in 'new Transit' so that the Company can continue to operate transit service in the greater Kansas City area."

3. The Greater Kansas City Bus Company was a corporation formed as a wholly-owned subsidiary of Westgate for the purpose of owning the operating properties

of Transit. Buses were leased to Transit.

4. At this hearing a company balance sheet for February 29, 1964, disclosed current assets of $431,108 and current liabilities of $1,393,842, whereas at the time of the reorganization of Transit, current assets and liabilities had been approximately equal. The unearned surplus account also reflected the results of the partial liquidating dividends.

all the purposes of this chapter." Section 386.040.

We have concluded, and hold, that the Commission did have statutory authority to make the order in question. Various sections of the statutes indicate a clear intention of the Legislature that the Commission should exercise supervision and control over the capital structure of street railway corporations and other common carriers within its jurisdiction.

The power of a common carrier to issue stocks and bonds (as well as evidences of debt and instruments creating liens) is declared by § 387.240 to be a privilege which is subject to "supervision, regulation, restriction, and control" by the Commission. Further provisions relative to Commission control of the issuance of stock, bonds and other evidences of debt are contained in § 387.270. Under the latter section, the order of the Commission is to specify the uses or purposes to which the issue or proceeds are to be applied, and proceeds are not to be used otherwise except with Commission approval. Under § 387.280, no stock, bond or scrip dividend is to be declared without Commission authorization, and approval is required before the proceeds of any stock, bond or scrip issue may be distributed to stockholders. A merger or consolidation of carriers is permissible only with Commission approval. Section 387.250. Reorganizations are subject to Commission supervision and control and may not occur without authorization. Section 387.340. Under § 386.320 the Commission is charged with keeping itself informed as to the capitalization of a common carrier, as well as with respect to its condition and the adequacy of its operations. These are in addition to the sections which require street railway companies to furnish service and facilities which are reasonable and adequate and authorize the Commission to require such service and facilities. Sections 387.030, 387.210 and 387.220.

These sections provide specifically for supervision and control by the Commission of (1) the amount of stock (and other capitalization) with which a company such as Transit commences operations as a common carrier, (2) subsequent issuance of stock or other items increasing the capitalization, and (3) changes in capitalization resulting from reorganizations or mergers. This supervision is not limited to controlling increases in the capital structure. For example, § 387.340, relating to reorganizations, provides that "[u]pon all such reorganizations the amount of capitalization, including therein all stocks and bonds and other evidence of indebtedness, shall be such as is authorized by the commission," and that "any reorganization agreement before it becomes effective shall be amended so that the amount of capitalization shall conform to the amount authorized by the commission." This language indicates an intention that the capital structure after reorganizaion would continue to be that approved by the Commission in the reorganization until such time as the Commission might approve some change therein. If that is not what the quoted portion of the statute means, it simply is stating the obvious, namely, that at the conclusion of the reorganization the capitalization would be that which the Commission had specified in its order of approval. We do not believe the Legislature included this language for such a useless purpose, and we do not attribute to it such a restricted meaning.

Under Transit's theory, the corporation would be free at any time after the Commission has approved the composition of the capital structure to declare a partial liquidating dividend which would change the capital structure from that which the Commission had approved. If this contention is correct, the right granted to the Commission to determine the capital structure at the inception of operations or when additional capital is provided by issuance of stocks or bonds, or where there is a merger or a reorganization, would be meaningless because immediately thereafter the carrier could nullify the direction of the Commis-

sion by making capital distributions to its stockholders without Commission approval. In fact, this is exactly what Transit did by its two liquidating dividends made subsequent to the approval by the Commission of the capital structure of Transit in the reorganization of 1961 and the approval of the transfer of stock following the merger in 1962.

Section 387.280, which prohibits distribution to stockholders of the proceeds of stock, bond or scrip issues unless approved by the Commission, is further evidence that the Legislature intended that the Commission should have a voice in determining whether and when capital dstributions are to be made. In effect, Transit, by its two liquidating dividends in 1963, distributed to stockholders a part of the funds which had been represented by preferred stock and which became available to the corporation as unearned surplus by reason of cancellation of that stock.

█ It is our view that a reading of the statutes relative to the Public Service Commission, and particularly the sections to which reference is made herein, indicates that it was intended that the Commission should control the capital structure of carriers under its supervision, both as to increases and decreases therein. We also consider that the power to enter the order here in question is to be implied and necessarily is incident to the right conferred expressly on the Commission to approve and supervise the issuance of stock, bonds and other evidence of indebtedness and the right to specify the capital structure in the event of merger or reorganization. Section 386.040 confers on the Commission powers necessary to carry out the purposes of the Act. That would include the right to say,

as the Commission did here, that Transit may not reduce its capitalization by distributing unearned surplus to stockholders without Commission approval. This interpretation is in harmony with the viewpoint expressed by this court in earlier cases interpreting this Act. State on inf. Barker ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, 163 S.W. 854; State ex rel. City of Sedalia v. Public Service Commission, 275 Mo. 201, 204 S.W. 497; State ex rel. Missouri Southern R. Co. v. Public Service Commission, 259 Mo. 704, 168 S.W. 1156; State ex rel. City of Carthage v. Public Service Commission, 303 Mo. 505, 260 S.W. 973.

Transit would avoid the above conclusion on the basis that it is organized under Chapter 351 (The General and Business Corporation Law), which specifically authorizes capital distributions to stockholders from unearned surplus under § 351.210.[5] This provision is controlling, says Transit, "in the absence of an express statute prohibiting a public service corporation from declaring and distributing paid-in surplus to its stockholders."

██ The fact that Transit was organized under Chapter 351 does not exempt it from the provisions of Chapters 386 and 387, which provide for regulation of street railway companies and other carriers by the Commission. If it did, then Transit could issue additional stock or bonds, or incur indebtedness secured by mortgages, or merge or reorganize, or sell its street railway property, all without Commission approval. Chapter 351 contains provisions permitting corporations thereunder to do all of these things pursuant to proper corporate authorization. However, when Transit operates as a street railway com-

---

5. "351.210. Paid-in surplus—its distribution and restrictions. 1. Paid-in surplus, whether created by reduction of stated capital or otherwise, may be distributed in cash or in kind to the shareholders entitled thereto, subject to the following restrictions * * *:
 "(1) [Inapplicable]

 "(2) No such distribution shall be made to any class of shareholders when the net assets are less than its stated capital or when such distribution would reduce the net assets below the stated capital;
 "(3) Each such distribution, when made, shall be identified as a liquidating dividend * * *."

pany, it subjects itself to the provisions of Chapters 386 and 387 and the jurisdiction of the Public Service Commission. That restricts, in certain respects, what it might do if it operated solely as a general business corporation organized under Chapter 351. For example, it may not issue its stock, or sell its transportation facilities, or merge or reorganize, or do certain other things unless it obtains Commission approval.

■ Transit apparently does not assert an unrestricted authority under Chapter 351 to do all things which that chapter permits corporations organized thereunder to do. This is illustrated by the fact that Transit has gone to the Commission for approval of its mergers and reorganizations. The statement in Transit's brief that § 351.210 authorizes distributions from unearned surplus to stockholders in the absence of an express statute prohibiting such action by a public service corporation, indicates that Transit recognizes that if a section of Chapter 386 or Chapter 387 specifically prohibited such action without Commission approval, such section would govern. Hence, Transit's position really amounts to a restatement of its contention that there is no express statutory authorization for the order by the Commission, and for that reason § 351.210 governs. We already have recited the reasons why we hold that the Commission does have implied authority under Chapters 386 and 387 to require that reductions in the capital structure of a street railway company, including paid-in surplus, be made only with Commission approval. This does not mean a nullification of the provisions of § 351.210. It means only that the right of Transit to act under that section (as under other provisions of Chapter 351, such as the power to issue stocks or bonds or sell property or merge) is subject to approval by the Commission because of

the company's nature as a public service company.[6]

■ We agree with the statement in State ex rel. City of St. Joseph v. Public Service Commission, 325 Mo. 209, 30 S.W.2d 8, 14, that "[I]t must be kept in mind that the commission's authority to regulate does not include the right to dictate the manner in which the company shall conduct its business." Transit asserts that the order complained of was doing just that. We do not agree. The order does not relate to action by Transit in determining whether to pay a regular dividend out of earnings, or some other purely management prerogative. It is not a question comparable to the determination of who shall be president or counsel of Transit, which was advanced in argument as an analogy. Rather, it involves a change in capital structure of the company, just as much as where there is a merger or reorganization or the issuance of additional stock or bonds. These are areas in which the Legislature has required Commission approval.

Cases from other states are cited by Transit in support of its contention that the statutes did not authorize the Commission to make the order in question. We have reviewed these cases but do not deem it worthwhile to analyze them herein. They interpret statutes of other states, and none have persuaded us to a conclusion different than that herein announced.

Transit's second contention is that the order of the Commission was unreasonable and not supported by evidence.

■ The function of the courts in reviewing orders of the Public Service Commission on the issue of reasonableness is to determine whether the order is supported by competent and substantial evidence upon the whole record. Sometimes

---

6. Section 351.690(3) indicates an intention of the Legislature that Chapter 351 should not affect companies such as street railway companies where to do so would be inconsistent with, in derogation of, or in conflict with the purpose of, existing laws with reference to such companies. In that connection, see Law Review Commentaries following § 351.010, 17 V.A.M.S., pp. 330, 331.

it is stated that the court is to determine whether the order is arbitrary or capricious or against the overwhelming weight of the evidence. State ex rel. Chicago, Rock Island & Pac. R. Co. v. Public Service Commission, Mo., 312 S.W.2d 791; State ex rel. City of West Plains v. Public Service Commission, Mo., 310 S.W.2d 925. We hold that the order was supported by competent and substantial evidence. In addition to the facts already recited, the record contains a study, conducted at the Commission's request, by two professors on the faculty of the School of Business and Public Administration of the University of Missouri. That report pointed out that current assets had been pared to an operational minimum and that the ability of the company to raise cash in an emergency appeared to be limited. It concluded that the liquidating dividend of $250,000 made June 20, 1963, should not have been made, and that the company could not afford further liquidating dividends in the foreseeable future. The record in the case indicates that attorneys for Transit recognized the

fairness of this report.[7] It is true, as Transit points out, that there was no evidence of insolvency of Transit or that it had failed to furnish service, but nevertheless there was substantial evidence to support the order which was made. The Commission was not required to wait until the horse was gone to lock the barn door. Liquidating dividends of $1,804,600 had been made in 1963 and used by the stockholders to pay on the purchase price of the stock. Another $1,500,000 had been withdrawn in the sale of the 4% Series C Bonds (returned later as a result of Commission hearing). The Commission concluded that these capital withdrawals, if continued, would imperil the ability of the company to provide service. The Commission was not required to await either inadequate service or insolvency as a condition precedent to action on its part. This would be inconsistent with the language and the purpose of The Public Service Commission Act.[8]

Complaint is made by Transit of a conclusion of the Commission as to the purpose

---

7. The record also discloses that on May 3, 1963, certain 4% First Mortgage Series C Bonds of Transit in the amount of $1,589,100, maturing January 1, 1967, were sold by Transit for $1,500,000 to Alice Wrigley as trustee for the stockholders. These bonds, after original issuance, had been reacquired by Transit but had not been cancelled. Transit received $1,500,000 from Alice Wrigley, but immediately declared an additional liquidating dividend of $1,500,000 and returned the $1,500,000 to Alice Wrigley. As a result, the unearned surplus account was reduced by that sum. Alice Wrigley then pledged the Transit bonds as additional collateral security to guarantee payment of the notes given by the seven stockholders when they purchased the stock of Transit. As a result of proceedings before the Commission, this transaction was cancelled and the bonds were returned to the treasury of the corporation and the $1,500,000 reduction in the unearned surplus account was restored.

8. The viewpoint of the Commission was expressed in its comments overruling Transit's application for rehearing, as follows:

"Any public utility, including a street railway corporation, subject to the jurisdiction of the Commission cannot liquidate its assets, distribute the same to its shareholders and discontinue its service to the public without the approval of the Commission. However, the Transit Company had accomplished a partial liquidation. The study conducted by financial experts employed by the Commission and the City of Kansas City found that the company's assets have been pared to an operational minimum and concluded that the company cannot afford further liquidating dividends in the foreseeable future. The Respondents concurred in the findings and conclusions of these experts.

" 'ORDERED: 5.' was promulgated pursuant to the powers and duties of the Commission in regard to the capitalization of the Transit Company with the intention of providing maximum protection to the capital integrity of the company and its resulting ability to render public service. The directive is independent of the uniform system of accounts applicable to the company and it was issued as an additional safeguard against further liquidation of the company."

of a depreciation reserve and the purposes for which cash received from depreciation accruals may be used. That question is not before us on this appeal, and we express no opinion thereon. This appeal does not involve the use of a depreciation reserve but only the question of the propriety of the Commission's order prohibiting further distributions from the unearned surplus without Commission approval and whether there was evidence to support the order in this case. Our opinion is limited to these questions.

The judgment is affirmed.

All concur.